**IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA**

**Alexandria Division**

| | | |
|---|---|---|
| **Zachary Chesser** *also known as* **Abu Talhah, Plaintiff,** | ) | |
| **v.** | ) | **1:13cv129 (LO/IDD)** **Appeal No. 13-7239** |
| **Federal Bureau of Investigation, et al., Defendants.** | ) | |

MEMORANDUM OPINION

Zachary Chesser, also known as Abu Talhah, a federal inmate proceeding pro se, filed a civil rights action pursuant to Bivens v. Six Unknown Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), the Foreign Intelligence Surveillance Act, and the Privacy Act. Dkt. No. 1. Plaintiff alleged that various federal officials conspired with his mother regarding the custody proceedings for his son. Id. By Order dated February 14, 2013, plaintiff's complaint was dismissed as frivolous, pursuant to 28 U.S.C. § 1915A(b)(1). Dkt. No. 6.

Plaintiff appealed and on May 1, 2015, the United States Court of Appeals for the Fourth Circuit affirmed in part and remanded in part. Appeal No. 13-7239. The Fourth Circuit remanded the matter to allow plaintiff to submit "an amended complaint raising only a Privacy Act claim against the FBI and Secret Service." Id.

On July 23, 2015, the court received plaintiff's second amended complaint in which he asserted Privacy Act claims against the United States Secret Service ("USSS") and the Federal Bureau of Investigation ("FBI").[1] Dkt. No. 52. Defendants have filed a Motion to Dismiss and Motion for Summary Judgment, as well as memoranda of law with supporting exhibits. Dkt.

[1] Because plaintiff's claims will be dismissed, the Court will assume, without deciding, that the USSS and the FBI are the properly named defendants in this civil matter.

Nos. 78-80. Plaintiff was given the Notice required by Local Rule 7(K) and the opportunity to file responsive materials pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975). After having been granted an extension of time to respond, plaintiff filed a Response to Defendants' Motion to Dismiss. Dkt. No. 95. After receiving an extension of time to file, defendants filed a Reply Memorandum in Support of Defendants' Motion to Dismiss and Motion for Summary Judgment. Dkt. Nos. 100-101. This matter is now ripe for adjudication.

## I. Background

### A. Motion to Dismiss

Plaintiff's allegations, which will be taken as true for purposes of the Motion to Dismiss, are as follow.[2] Plaintiff is currently an incarcerated federal inmate. SAC at ¶ 6. He is married to Proscovia Nzabanita ("Proscovia") and together they have a child, T.C. Id. at ¶ 9. Plaintiff's mother is Barbara Chesser ("Barbara") and Proscovia's mother is Cecilia Nzabanita ("Cecilia"). Id.

Plaintiff was arrested in July 2010, and charged with providing material support to terrorists. Id. at ¶ 15. Both before and after his arrest, the FBI monitored plaintiff's and Proscovia's communications. Id. at ¶¶ 40-46. On October 20, 2010, plaintiff pled guilty because he was afraid that his son would not be raised as a Muslim if his wife were imprisoned. Id. at ¶¶ 17-18. Plaintiff was sentenced to 300 months in prison on February 24, 2011. Id. at ¶ 21.

[2] For purposes of the Motion to Dismiss, the Court also relies on evidence plaintiff explicitly relied on in the second amended complaint, as plaintiff does not challenge the authenticity of this evidence. See Kerr v. Marshall Univ. Bd. of Governors, 824 F.3d 62, 68 (4th Cir. 2016) ("In ruling on a motion to dismiss for failure to state a claim, courts may rely on evidence that is extraneous to the complaint without converting the motion to one for summary judgment — provided that the evidence's authenticity is not challenged and the evidence is integral to and explicitly relied on in the complaint") (internal quotation marks and citation omitted). The evidence relied upon includes court orders from the underlying custody matters related to plaintiff's son ([redacted]), a January 18, 2011 Memorandum written by FBI agents, and a January 19, 2011 email from an FBI agent to plaintiff's mother.

Proscovia pled guilty to making false statements to federal officials on November 8, 2010, and as part of her plea deal she agreed to relinquish her legal status in the United States and to leave the country by March 8, 2011. Id. at ¶¶ 23-24.

[redacted]

Plaintiff asserts six counts of violations of the Privacy Act.

**i. Count One – January 19, 2011 Email from Agent Menges to Barbara's Attorney**

Prior to [redacted], plaintiff and Proscovia planned to send T.C. to Jordan on January 19, 2011, with a friend, to demonstrate that T.C. would be safe, regardless of what happened to Proscovia, and "to ensure that he would be with Muslims in a worst case scenario." SAC at ¶¶ 47-50. On January 18, 2011, FBI Agents Hersem and Piro wrote a memorandum to an assistant United States Attorney regarding plaintiff's and Proscovia's plan. Pl. Opp. to MTD/MSJ at Ex. A. The agents wrote that the FBI believed neither plaintiff nor Proscovia had violated any laws, but that, because of [redacted], both plaintiff and Proscovia could be in danger of being charged with violating a court order or state law in the future, which would be a violation of their plea deals. Id. The next day, FBI Agent Menges emailed a copy of this memorandum to Barbara's attorney. Id. at Ex. B. The email also stated that a copy of the memorandum was sent to plaintiff and Proscovia "by way of their known attorneys." Id. This disclosure of a record stored in an FBI system of records was willful and intentional, and caused plaintiff to spend money fighting evidence from the disclosure in child custody proceedings and in mitigating its harm to him in the public. SAC at ¶¶ 56-64.

**ii. Count Two – January 19, 2011 Phone Call from Agent Kirgan to Barbara**

On January 19, 2011, FBI Agents Kirgan and Menges, as well as unknown U.S. Marshals and New York City Police Department officers, intercepted T.C. and plaintiff's friend at JFK

Airport, refusing to allow them to leave for Jordan. Id. at ¶ 65-66. During this time, Agent Kirgan and another unknown FBI agent called Barbara to inform her of plaintiff's and Proscovia's plan to send T.C. to Jordan. Id. at ¶ 67-68. The events that took place at the airport were documented in records after the incident. Id. at ¶ 71. The disclosure of this information was willful and intentional, and caused plaintiff to spend money fighting the use of information from the disclosure in child custody proceedings and in mitigating its harm to him in the public. Id. at ¶¶ 74-75. Barbara and her attorney have also used this information to try to have Proscovia and T.C.'s Jordanian visas revoked, which would have forced them to go to Uganda where Proscovia's life is in danger. Id. at ¶¶ 76-77. The Jordanian government interrogated Proscovia, kicked her out of the university she was attending, and ordered her to leave the country while attempting to arrest her. Id. at ¶¶ 78-80. Proscovia was a fugitive for a month until she was declared a refugee by the United Nations; however, she is unable to work in Jordan and lives off assistance from the United Nations and others. Id. at ¶¶ 81-82. Because of Proscovia's limited ability to work, she is no longer able to send money to support plaintiff. Id. at ¶¶ 83-84.

**iii. Count Three – July 12, 2011 Phone Call Between Agent Kinder and Barbara**

On July 12, 2011, FBI Agent Kinder allegedly called Barbara to inform her that (1) plaintiff and Proscovia planned to send T.C. to Jordan with Cecilia so that T.C. could be with Proscovia, and (2) T.C. had been attending a mosque and wearing Islamic clothing while in Cecilia's care. Id. at ¶ 87-90. This disclosure of information contained in FBI records was based on plaintiff's communications and the surveillance of Proscovia. Id. at ¶¶ 95-96, 98-99. Plaintiff learned of this disclosure based on testimony from the custody proceedings. Id. at ¶ 97. Plaintiff claims the disclosure of this information was willful and intentional, and caused plaintiff to

spend money fighting the use of this information in child custody proceedings and in mitigating its harm to him in the public. Id. at ¶¶ 100-102.

**iv. Count Four – December 2011 Phone Call Between Agent Kinder and T.C.'s Guardian Ad Litem**

In December 2011, T.C.'s GAL "called the FBI to verify the information" disclosed to Barbara, as alleged in Count Three. Id. at ¶ 105. During the call, Agent Kinder disclosed the same information to the minor child's GAL. Id. at ¶¶ 106-107. The disclosure of this information to T.C.'s GAL [redacted], was willful and intentional, and caused plaintiff to spend money fighting the use of this information in child custody proceedings and in mitigating its harm to him in the public. Id. at ¶¶ 108-110.

**v. Count Five – Copy of Draft Article**

Aviva Stahl began researching the events outlined in the second amended complaint to write an article. Id. at ¶ 113. Plaintiff's GAL provided her with a transcript of the custody hearing. Id. at ¶ 114. In January 2012, Barbara obtained a draft of Stahl's article, which "was not the same as [the] one Stahl sent" plaintiff; therefore, plaintiff claims, the only way Barbara could have obtained the draft article was if an FBI agent provided it to her from records they kept of plaintiff's communications. Id. at ¶¶ 115-118. [redacted]

The disclosure of this information, which was part of an FBI system of records, was allegedly willful and intentional. Id. at ¶¶ 125-126.

**vi. Count Six – November 26, 2012 Disclosure of FBI Records**

On November 26, 2012, the FBI informed plaintiff that, in response to a request for information, they disclosed information about plaintiff contained in FBI records. Id. at ¶ 128. This intentional and willful disclosure of information was supposedly based on the "health or safety" exception to the Privacy Act, despite the fact that plaintiff was not affecting anyone's health or safety at the time. Id. at ¶¶ 129, 134, 136. Plaintiff spent money learning what information was disclosed and to whom it was disclosed. Id. at ¶ 133. He learned that the information was disclosed to either Barbara, her attorney, or T.C.'s GAL for use in the custody proceedings. Id. at ¶ 130.

**B. Motion for Summary Judgment**

Attached to their Motion for Summary Judgment, defendants provided sworn affidavits from Barbara and Agent Kinder. Defs. MTD/MSJ at Exs. 4, 5. In her affidavit, Agent Kinder states that she called Barbara on July 12, 2011 to ask about the current terms of T.C.'s custody and whether he was prohibited from traveling outside the United States. Id. at Ex. 4. Agent Kinder also states that she "did not disclose any information about [plaintiff's and Proscovia's] plans;" rather, Barbara answered Agent Kinder's questions and the call ended. Id. Finally, Agent Kinder states that she did not "disclose or share any draft article or information regarding any of [plaintiff's] communications with Aviva Stahl with [Barbara] or any other member of the public." Id.

In her affidavit, Barbara states that, prior to the July 12, 2011, phone call from Agent Kinder, Cecilia told her that "she was planning on taking T.C. to visit his mother 'very soon,'" prompting Barbara to consult with her attorney about modifying the custody arrangements. Id. at Ex. 5. Barbara states that, during the call from Agent Kinder, she was asked about the terms of

the custody agreement for T.C. and whether T.C. was allowed to travel out of the United States, but that Agent Kinder did not disclose any information to her about plaintiff or the minor child. Id. Barbara states that she answered Agent Kinder's questions and then ended the call, at which point she feared that Cecilia would take T.C. to Jordan where he would be in unsafe conditions. Id. Finally, Barbara states that she received a draft article being written by Aviva Stahl from her attorney, who received the copy from T.C.'s GAL. Id. The letter from Barbara's attorney that was sent to Barbara with the draft article states "the author is a woman by the name of Aviva Stahl .... Apparently [plaintiff's GAL] is communicating with her about the article, but at this time we do not know how she obtained a copy of the transcript." Id.

**II. Privacy Act**

"The Privacy Act of 1974, codified in part at 5 U.S.C. § 552a, contains a comprehensive and detailed set of requirements for the management of confidential records held by Executive Branch agencies." F.A.A. v. Cooper, 132 S. Ct. 1441, 1446 (2012). "No agency shall disclose any record which is contained in a system of records ... to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains, unless disclosure of the record" falls under one of a list of exceptions. 5 U.S.C. § 552a(b). Should an agency violate the requirements set out in the Privacy Act,

> [t]he text of §§ 552a(g)(1)(D) and (g)(4) clearly provide that (1) if an individual can show an adverse effect (2) caused by the Government's intentional or willful breach of the statute, (3) the Government shall be liable to that individual for the sum of (a) actual damages and (b) the costs and reasonable attorney fees of the action.

Doe v. Chao, 435 F.3d 492, 495 (4th Cir. 2006) (alterations omitted); see also Quinn v. Stone, 978 F.2d 126, 131 (3d Cir. 1992) (holding the elements of a cause of action under

§ 552a(g)(1)(D) are "(1) the information is covered by the Act as a 'record' contained in a 'system of records'; (2) the agency 'disclose[d]' the information; (3) the disclosure had an 'adverse effect' on the plaintiff (an element which separates itself into two components: (a) an adverse effect standing requirement and (b) a causal nexus between the disclosure and the adverse effect); and (4) the disclosure was 'willful or intentional'") (alteration in original).

> [T]he [Privacy Act] establishes a standard of intentional or willful behavior that, on a continuum between negligence and the very high standard of willful, arbitrary, or capricious conduct is viewed as only somewhat greater than gross negligence. Thus, the standard for intentional or willful behavior under the Privacy Act has been articulated as an act committed without grounds for believing it to be lawful, or by flagrantly disregarding others' rights under the Act.

Scrimgeour v. Internal Revenue, 149 F.3d 318, 326 (4th Cir. 1998) (internal quotation marks, citations, and alterations omitted).

## III. Motion to Dismiss

### A. Standard of Review

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss those allegations which fail "to state a claim upon which relief can be granted." A court may dismiss claims based upon dispositive issues of law. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). The alleged facts are presumed true, and the complaint should be dismissed only when "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Id. To survive a 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

Id. However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to meet this standard, id., and a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." Twombly, 550 U.S. at 55.

On the other hand, where, as here, a complaint is filed by a prisoner acting pro se, it must be construed liberally no matter how unskillfully it is pleaded. Haines v. Kerner, 404 U.S. 519 (1972). A pro se litigant thus is not held to the strict pleading requirements demanded of attorneys. Estelle v. Gamble, 429 U.S. 97, 106–07 (1976); Figgins v. Hudspeth, 584 F.2d 1345 (4th Cir. 1978), cert. denied, 441 U.S. 913 (1979). For these reasons, a court's "power summarily to dismiss a prisoner's pro se complaint is limited." Figgins, 584 F.2d at 1347.

**B. Counts One and Two – January 19, 2011 Email from Agent Menges to Barbara's Attorney and January 19, 2011 Phone Call from Agent Kirgan to Barbara**

Defendants argue that plaintiff has failed to sufficiently plead that Agent Menges' and Agent Kinder's disclosures of plaintiff's and Proscovia's plan to have their friend take T.C. to Jordan in January 2011 were intentional or willful. Defs. MTD/MSJ at 21-22, 29. In Counts One and Two, plaintiff asserts nothing more than the conclusory allegation that defendants acted intentionally and willfully. SAC at ¶ 58, 75. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient to survive a Rule 12(b)(6) motion. Twombly, 550 U.S. at 55. In fact, at the pleading stage, conclusory allegations need not be taken as true. See Beck v. McDonald, (4th Cir. Feb. 6, 2017) ("We do not, however, apply the same presumption of truth to 'conclusory statements' and 'legal conclusions' contained in [plaintiff's] complaint.") (citations omitted).

In response, plaintiff argues that it can be inferred that defendants acted intentionally and willfully because they (1) had "no business in interfering in custody issues ... where the parents

are acting legally," (2) continued to interfere for two more years, making it "highly unlikely that this multi-year conspiracy was an 'honest mistake,'" (3) used a "massive response" to stop the trip to Jordan, (4) wanted Barbara to have custody of T.C. because she works next to a FBI field office while plaintiff is a convicted terrorist, (5) "revealed active FISA surveillance" with this disclosure, and (6) used plaintiff's son to secure a guilty plea and knew plaintiff was considering a collateral attack on his plea. Pl. Opp. to MTD/MSJ at 10-12, 15-16. However, it is not reasonable to infer that defendants acted intentionally or willfully based on the allegations in the second amended complaint. At most, it is reasonable to infer that defendants acted with gross negligence. Accordingly, plaintiff has not pled that the January 19, 2011 disclosures described in Counts One and Two were "committed without grounds for believing it to be lawful, or by flagrantly disregarding others' rights under the Act." Therefore, Counts One and Two will be dismissed with prejudice for failure to state a claim upon which relief can be granted. See Piccone v. U.S. Patent & Trademark Office, 2015 WL 6499687, at *5 (E.D. Va. Oct. 27, 2015) ("Plaintiff's complaint with regards to his Privacy Act claim is ... nothing more than exactly the kind of formulaic recitation of the elements of a cause of action which will not do.") (internal quotation marks, citations, and alterations omitted).

**C. Count Four - December 2011 Phone Call Between Agent Kinder and T.C.'s Guardian Ad Litem**

In Count Four, plaintiff alleges that Agent Kinder disclosed information in violation of the Privacy Act during a phone call with T.C.'s GAL in December 2011; however, taking all of plaintiff's allegations as true, he is not entitled to relief because he states that T.C.'s GAL knew the information allegedly disclosed prior to the December 2011 phone call. Specifically, plaintiff alleges that T.C.'s GAL called the FBI to "confirm" the information previously

disclosed to Barbara. In other words, the allegations establish that T.C.'s GAL first learned of the information from a source other than defendants.

> Other courts ... held that the [Privacy Act] is not violated when a government agency makes available information that is known by the recipient, "averring the 'common sense' notion that it is not possible to 'disclose' something to someone who already knows it." Pilon v. U.S. Dep't of Justice, 73 F.3d 1111, 1112 (D.C.Cir.1996) (citing Quinn v. Stone, 978 F.2d 126 (3rd Cir.1992); Kline v. Dep't of Health and Human Services, 927 F.2d 522 (10th Cir.1991); Reyes v. Supervisor of D.E.A., 834 F.2d 1093 (1st Cir.1987); and Pellerin v. Veterans Admin., 790 F.2d 1553 (11th Cir.1986)).

Jones v. Runyon, 32 F. Supp. 2d 873, 876 (N.D.W. Va. 1998), aff'd, 173 F.3d 850 (4th Cir. 1999). Accordingly, Count Four will be dismissed with prejudice for failure to state a claim upon which relief can be granted.

**D. Count Six – November 26, 2012 Disclosure of FBI Records**

In Count Six, plaintiff alleges that the FBI's November 26, 2012 disclosure of information in response to a request for information violated the Privacy Act. Defendants argue that plaintiff has failed to sufficiently plead that the disclosures made in November 2012 were intentional or willful. Defs. MTD/MSJ at 38. In the second amended complaint, plaintiff asserts that the FBI informed him that they disclosed their records pursuant to an exception to the Privacy Act. See SAC at ¶ 129. Specifically, 5 U.S.C. § 552a(b)(8) allows for the disclosure of documents "to a person pursuant to a showing of compelling circumstances affecting the health or safety of an individual if upon such disclosure notification is transmitted to the last known address of such individual." Plaintiff goes on to claim, in a conclusory fashion, that the disclosure did not meet § 552a(b)(8)'s standards, because it was not necessary in order to protect T.C.'s health and safety, and that the disclosure was intentional and willful. Id. at ¶¶ 134, 136; Pl. Opp. to MTD/MSJ at 35-36. The standard for determining if an action was intentional or willful is not whether it fell under one of the Privacy Act's exceptions to the prohibition of

disclosure; rather, it is whether the "act [was] committed without grounds for believing it to be lawful, or by flagrantly disregarding others' rights under the Act." Because the letter informing plaintiff of the disclosure establishes that defendants believed their disclosure was legal pursuant to § 552a(b)(8), plaintiff cannot establish that defendants' disclosure was intentional and willful. Accordingly, Count Six will be dismissed with prejudice for failure to state a claim upon which relief can be granted.

## IV. Motion for Summary Judgment

### A. Standard of Review

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that judgment on the pleadings is appropriate. See Celotex Corp. v. Citrate, 477 U.S. 317, 323 (1986) (moving party bears the burden of persuasion on all relevant issues). To meet that burden, the moving party must demonstrate that no genuine issues of material fact are present for resolution. Id. at 322. Once a moving party has met its burden to show that it is entitled to judgment as a matter of law, the burden then shifts to the non-moving party to point out the specific facts which create disputed factual issues. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Matsushita Electrical Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). In evaluating a motion for summary judgment, a district court should consider the evidence in the light most favorable to the non-moving party and draw all reasonable inferences from those facts in favor of that party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). Those facts which the moving party bears the burden of proving are facts which are material. "[T]he substantive law

will identify which facts are material. Only disputes over facts which might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. An issue of material fact is genuine when, "the evidence ... create[s] [a] fair doubt; wholly speculative assertions will not suffice." Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985). Thus, summary judgment is appropriate only where no material facts are genuinely disputed and the evidence as a whole could not lead a rational fact finder to rule for the non-moving party. Matsushita, 475 U.S. at 587.

**B. Count Three – July 12, 2011 Phone Call Between Agent Kinder and Barbara**

Plaintiff claims that Agent Kinder told Barbara that Cecelia had plans to take T.C. to Jordan and that T.C. had been attending a mosque and wearing Islamic clothing while with Cecelia; however, defendants' affidavits establish that Agent Kinder and Barbara never discussed this information during their July 12, 2011 phone call. In response, plaintiff argues that Barbara and Agent Kinder's statements

> are undermined by their past inquiry into the terms of the agreement…; Barbara's willingness to lie in order to obtain custody of T.C.…; her willingness to literally subject Proscovia to a life-threatening situation to take T.C. …; [redacted]; and the repeated disclosures and close relationship between [Barbara] and the FBI in this affair ….

Pl. Opp. to MTD/MSJ at 18-19. Plaintiff's arguments as to the credibility of these affidavits are merely speculative because he was not a party to the conversation. Therefore, his sworn statements are insufficient to present a conflicting version of the facts. See Fed. R. Civ. P. 56 ("[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge"); Scott v. Harris, 550 U.S. 372, 380 (2007) ("[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a

motion for summary judgment"). Accordingly, the undisputed facts establish that Agent Kinder did not disclose information about T.C. to Barbara on July 12, 2011. Because a disclosure is necessary for a violation of the Privacy Act to have occurred, defendants have established that they are entitled to judgment on the pleadings. See 5 U.S.C.A. § 552a(b); Quinn, 978 F.2d at 131. Thus, judgment will be entered in favor of defendants on Count Three.

**C. Count Five – Copy of Draft Article**

In Count Five, plaintiff asserts that Agent Kinder provided a draft of Stahl's article to Barbara. Specifically, plaintiff claims that "the only way Barbara [] could have obtained [Stahl's draft article] is if an FBI employee disclosed it to her;" SAC at ¶ 117, however, Barbara states in her affidavit that she received a draft of the article from her attorney, who in turn received it from T.C.'s GAL. Defs. MTD/MSJ at Ex. 5. Barbara has also provided a copy of the letter from her attorney to which the draft article was attached, corroborating her testimony. Id. In addition, Agent Kinder stated in her affidavit that she never disclosed the draft article to Barbara. Id. at Ex. 4. Finally, in the second amended complaint, plaintiff states that the draft article Barbara received was not the same as the draft he received, which undermines his argument that the draft article was taken from his records. See SAC at ¶ 116. Accordingly, the undisputed facts establish that there was no disclosure of the draft article from defendants to Barbara.

In response, plaintiff argues that "even if Kinder didn't disclose [the draft article] and [T.C.'s GAL] is the one who sent it to Barbara's attorney, it doesn't change the fact that somehow someone in the FBI disclosed it to somebody and that this disclosure resulted in [plaintiff's] harms." Pl. Opp. to MTD/MSJ at 23. These conclusory allegations that someone in the FBI disclosed the article to someone else are insufficient to meet plaintiff's burden of

creating a genuinely disputed fact. Accordingly, judgment will be entered in favor of defendants on Count Five.

**V. Pending Motions**

Plaintiff has filed a Motion to Seal his Opposition to Defendant's Motion to Dismiss and defendants have filed a Motion to File Document Partially Under Seal. Dkt. Nos. 94, 98. By Order dated September 1, 2016, the parties were directed to submit all filings in this matter referencing sealed documents related to T.C. under seal. Dkt. No. 88. As both plaintiff's Response to the Motion to Dismiss and defendants' Reply Memorandum reference previously sealed documents related to the minor child, the motions will be granted.

**VI. Conclusion**

For the reasons stated above, defendants' Motion to Dismiss and Motion for Summary Judgment will be granted and this civil action will be closed. In addition, the pending motions to seal documents will be granted. An appropriate Order shall issue.

Entered this 17th day of February 2017.

Alexandria, Virginia

/s/

Liam O'Grady
United States District Judge